[Civ. No. 63312. Second Dist., Div. Four. Nov. 13, 1981.]

ROBERT ZAVALA, Plaintiff and Appellant, v.
THE REGENTS OF THE UNIVERSITY OF CALIFORNIA et al.,
Defendants and Respondents.

COUNSEL

Thomas F. Mortimer for Plaintiff and Appellant.

Grunsky, Pybrum, Skemp & Ebey, Grunsky, Pybrum, Skemp, Ebey & Farran and Frederick H. Ebey for Defendants and Respondents.

OPINION

**WOODS, J.**—Plaintiff appeals from a judgment in favor of defendants following a jury trial on his action for personal injuries. The bifurcated trial was on the issue of liability only. The jury rendered a special verdict, finding that defendants were negligent and that plaintiff was guilty of wilful misconduct, and apportioned liability 80 percent to plaintiff and 20 percent to defendants. The trial court found that wilful misconduct on the part of the plaintiff barred recovery against the defendants, who were guilty of only ordinary negligence, and entered judgment in favor of defendants. We have concluded that, applying the doctrine of comparative negligence, the trial court should have allowed the matter to proceed to trial on the issue of damages and assessed to plaintiff 20 percent of any damages awarded.

Appellant also cites as error the instruction of the jury on the issue of wilful misconduct, contending that the evidence is insufficient to support a finding of wilful misconduct on the part of the plaintiff.

## I

The facts as reflected by the record, and not as distorted by the appellant's opening brief, are as follows:

On January 21, 1977, plaintiff was a 23-year-old lumber company employee. That evening, he and a friend went to a party on the campus of UC Santa Cruz. On the way to the party, they bought a six-pack of beer, and appellant drank two or three of those beers before they arrived on campus. They went to the room of a friend in the campus dormitory, and appellant had with him a bottle of beer and a pint bottle of apricot brandy. In the room, their friend offered them marijuana and the three men smoked about two pipes full. They then went to a student party on another floor of the dormitory, sponsored by the resident assistant and the preceptors of the dormitory. Beer was served from a keg, and appellant drank six cups of beer from that keg. Appellant also drank from his bottle of apricot brandy, which by the end of the evening was approximately three-quarters empty.

A second keg of beer was produced, and appellant drank an unknown number of glasses of beer from that second keg. At approximately 1:30, appellant and some friends went to a student's room located on the fourth floor of the dormitory. After a few minutes, appellant asked directions to the restroom and was told that it was across the hall. He did not go to the restroom, but went outside through a door marked "exit" at the end of the hall. Appellant recalls that he went out for fresh air, feeling as if he needed to vomit.

The door through which appellant passed leads to a staircase. Rough-surfaced concrete stairs lead from the fourth floor to a concrete balcony halfway between the fourth and third floors. The stairs have nonskid adhesive strips and a pipe railing off to the right-hand side. The balconies are completely surrounded by a concrete wall extending up 43 inches above the balcony level. The wall is eight inches thick.

When appellant did not return to the party within 10 or 15 minutes, his friend, Charles Terry, went looking for him and found him lying on the ground directly below the balcony of the exterior stairs.

Expert testimony established that appellant's blood alcohol level at the time of the fall was approximately .24 percent and that the two-thirds of a marijuana cigarette smoked earlier in the evening would

have increased the severity of appellant's intoxication. Appellant is five feet four and one-half inches tall, and the forty-three-inch-high wall around the balcony would have come up to the height of his chest.

## II

Appellant contends that the court erred in instructing the jury on the issue of his wilful misconduct, alleging that he was a young, inexperienced drinker who did not understand the effect that alcohol would have on him. This contention is frivolous based upon the evidence introduced below. Appellant's deposition testimony, which was read into the record at trial, established that appellant began drinking alcohol at the age of 19; on 8 occasions prior to the accident, he had drunk enough to become intoxicated. He testified that drinking six beers would make him "high," but not drunk. It took approximately 12 beers for him to become intoxicated, and on those 8 occasions, he drank so much that he did not know what he was doing. In his deposition he also testified that he would drink beer, bourbon, or whatever it took to become intoxicated. Finally, in his deposition, he testified that he had smoked marijuana on about 12 occasions prior to the party.

█ Numerous California decisions have held that voluntary intoxication may amount to wilful misconduct, and whether it does so is a question of fact for the jury. (See, e.g., *Ewing* v. *Cloverleaf Bowl* (1978) 20 Cal.3d 389, 404 [143 Cal.Rptr. 13, 572 P.2d 1155].) There was ample evidence from which the jury could have concluded that appellant's voluntary intoxication amounted to wilful misconduct.

## III

Appellant correctly contends, however, that that wilful misconduct does not bar his recovery in this case. Although the jury found that the defendants' negligence, in continuing to serve alcoholic beverages to an obviously intoxicated person, contributed 20 percent to the plaintiff's injury, the trial court refused to apply the doctrine of comparative negligence, believing that wilful misconduct superseded negligence and prevented plaintiff's recovery.[1]

---

[1]Although Business and Professions Code section 25602 has been amended to absolve the server of alcoholic beverages from civil liability for damages caused by or to an intoxicated person, that amendment was not effective until January 1, 1979. No issue is presented under *Vesely* v. *Sager* (1971) 5 Cal.3d 153 [95 Cal.Rptr. 623, 486 P.2d 151], however, as defendants did not appeal the jury's finding of negligence.

■ The trial court's conclusion that wilful misconduct bars application of the comparative negligence doctrine was erroneous.

In *Li* v. *Yellow Cab Co.* (1975) 13 Cal.3d 804 [119 Cal.Rptr. 858, 532 P.2d 1226, 78 A.L.R.3d 393], the California Supreme Court established the comparative negligence doctrine, abrogating the rule that contributory negligence on the part of the plaintiff was a complete bar to recovery. Although the *Li* case involved negligence on the part of both parties, the court indicated in dictum that "a comprehensive system of comparative negligence should allow for the apportionment of damages in all cases involving misconduct which falls short of being intentional." (*Li* v. *Yellow Cab Co., supra,* 13 Cal.3d at pp. 825-826.) Since that time, although the Supreme Court has not ruled directly on the precise issue before us, it has ruled that the comparative fault concept requires apportionment of liability where one tortfeasor is found to be negligent and the other is responsible based on products liability. (*Daly* v. *General Motors Corp.* (1978) 20 Cal.3d 725 [144 Cal.Rptr. 380, 575 P.2d 1162].) And in *Safeway Stores, Inc.* v. *Nest-Kart* (1978) 21 Cal.3d 322 [146 Cal.Rptr. 550, 579 P.2d 441], the Supreme Court extended allocation of fault among tortfeasors to cases where one defendant was liable in negligence and the other in strict liability. It is clear that there no longer exists in California a need for the categorization of misconduct into degrees of negligence. A finding of wilful misconduct previously operated to protect a plaintiff from the harsh doctrine of contributory negligence. With the abolition of that doctrine, the classification serves no purpose.

The precise issue before us was recently addressed in *Sorenson* v. *Allred* (1980) 112 Cal.App.3d 717 [169 Cal.Rptr. 441]. On almost identical facts, the court reversed a trial court's refusal to apportion damages between negligent and wilful parties, holding that the doctrine of comparative negligence applies where either party's conduct is anything less than intentional. We concur with the court's conclusion that: "[N]o defensible reason exists for categorizing wilful and wanton misconduct as a different kind of negligence not suitable for comparison with any other kind of negligence. The adoption of comparative negligence in *Li* rendered such a separate category unnecessary since contributory negligence on the part of a plaintiff was no longer a total bar to recovery for a tortious injury. We apply an old axiom, 'when the need for a rule ceases the rule ceases.'" (*Id.,* at p. 725.)

■

In *Southern Pac. Transportation Co.* v. *State of California* (1981) 115 Cal.App.3d 116 [171 Cal.Rptr. 187], the court concluded that recovery should have been allowed on a cross-complaint for contribution even though one party was negligent and the other found guilty of wilful misconduct.

Finally, in *Plyler* v. *Wheaton Van Lines* (9th Cir. 1981) 640 F.2d 1091, the court concluded that the law of California, ever since *Li* v. *Yellow Cab Co., supra,* 13 Cal.3d 804, has been that the wanton and wilful misconduct rule was superseded by the adoption of the doctrine of comparative negligence. We agree and conclude therefore that the application of the doctrine of comparative negligence to the facts of this case is not a retroactive application, but a recognition of the state of the law as it has existed since 1971.

Judgment for defendants is reversed. The trial court is instructed to reinstate the jury verdict, apportioning liability between the plaintiff and defendants, and to allow the parties to proceed with trial on the issue of damages.

Files, P. J., and Kingsley, J., concurred.

A petition for a rehearing was denied December 9, 1981.